1
2
3
4
5
6
7

8              **IN THE UNITED STATES DISTRICT COURT**

9             **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   SHAY'LIN SHAYLAH BARBEE,              No.  2:21-CV-0286-DMC

12                 Plaintiff,

13        v.                              <u>MEMORANDUM OPINION AND ORDER</u>

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                 Defendant.
16

17

18              Plaintiff, who is proceeding with retained counsel, brings this action for judicial

19   review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

20   Pursuant to the written consent of all parties, ECF Nos. 9 and 15, this case is before the

21   undersigned as the presiding judge for all purposes, including entry of final judgment.  <u>See</u> 28

22   U.S.C. § 636(c); <u>see also</u> ECF No. 16 (minute order assigning case to Magistrate Judge).

23   Pending before the Court are the parties' briefs on the merits, ECF Nos. 17 and 23.

24              The Court reviews the Commissioner's final decision to determine whether it is:

25   (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

26   whole.  <u>See</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

27   more than a mere scintilla, but less than a preponderance.  <u>See</u> <u>Saelee v. Chater</u>, 94 F.3d 520,

28   521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to

1

1    support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971).  The record as a whole,

2    including both the evidence that supports and detracts from the Commissioner's conclusion,

3    must be considered and weighed.  <u>See</u> <u>Howard v. Heckler</u>, 782 F.2d 1484, 1487 (9th Cir. 1986);

4    <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the

5    Commissioner's decision simply by isolating a specific quantum of supporting evidence.  <u>See</u>

6    <u>Hammock v. Bowen</u>, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the

7    administrative findings, or if there is conflicting evidence supporting a particular finding, the

8    finding of the Commissioner is conclusive.  <u>See</u> <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1229-30 (9th

9    Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation,

10    one of which supports the Commissioner's decision, the decision must be affirmed, <u>see</u> <u>Thomas</u>

11    <u>v. Barnhart</u>, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

12    standard was applied in weighing the evidence, <u>see</u> <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1338

13    (9th Cir. 1988).

14          For the reasons discussed below, the Commissioner's final decision is affirmed.

15

16                **I.  THE DISABILITY EVALUATION PROCESS**

17          To achieve uniformity of decisions, the Commissioner employs a five-step

18    sequential evaluation process to determine whether a claimant is disabled.  <u>See</u> 20 C.F.R. §§

19    404.1520 (a)-(f) and 416.920(a)-(f).   The sequential evaluation proceeds as follows:

20            Step 1      Determination whether the claimant is engaged in
21                       substantial gainful activity; if so, the claimant is presumed
                            not disabled and the claim is denied;

22            Step 2      If the claimant is not engaged in substantial gainful
23                       activity, determination whether the claimant has a severe
                            impairment; if not, the claimant is presumed not disabled
24                       and the claim is denied;

25            Step 3      If the claimant has one or more severe impairments,
                            determination whether any such severe impairment meets
26                       or medically equals an impairment listed in the
                            regulations; if the claimant has such an impairment, the
27                       claimant is presumed disabled and the claim is granted;

28    / / /

| | | |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

3

## II.  THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on December 19, 2017.  See CAR 15.[1]  In the application, Plaintiff claims disability began on March 17, 2017.  See id.  Plaintiff's claim was initially denied.  Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on July 7, 2020, before Administrative Law Judge (ALJ) Sara A. Gillis.  In an August 5, 2020, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

1.    The claimant has the following severe impairment(s): status-post cerebrovascular accident, obesity, hypertension, depressive disorder, and anxiety disorder;

2.    The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3.    The claimant has the following residual functional capacity: to perform light work except she can occasionally climb ramps and stairs, never climb ladders, ropes, and scaffolds, and should avoid working at heights and around dangerous machinery. She can understand, remember and apply simple job instructions; maintain concentration, persistence, and pace for simple job tasks; and can interact with supervisors and coworkers, but only interact occasionally with the public.

4.    Considering the claimant's age, education, work experience, residual functional capacity, vocational expert testimony, and the Medical-Vocational Guidelines, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 15 - 32.

After the Appeals Council declined review on December 14, 2020, this appeal followed.

/ / /

/ / /

/ / /

/ / /

/ / /

---

[1]    Citations are to the Certified Administrative Record (CAR) lodged on December 13, 2021, ECF No. 11.

### III. DISCUSSION

In the opening brief, Plaintiff raises the following arguments: (1) the ALJ erred in excluding several impairments properly characterized as severe at Step 2; (2) the ALJ erred in discounting lay witness evidence at Step 4; (3) the ALJ's decision at Step 4 regarding Plaintiff's subjective statements and testimony is based on unreliable evidence; and (4) the ALJ's physical and mental residual functional capacity assessments are unexplained at Step 4.  See ECF No. 17.

### A.      Severity Determination

To qualify for benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities.  See 20 C.F.R. §§ 404.1520(c), 416.920(c).[2]  In determining whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe.  See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923.  An impairment, or combination of impairments, can only be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.  See Social Security Ruling (SSR) 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28).  The plaintiff has the burden of establishing the severity of the impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings.  See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient.  See id.

/ / /

/ / /

/ / /

/ / /

---

[2]      Basic work activities include: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  See 20 C.F.R. §§ 404.1521, 416.921.

At Step 2 of the sequential analysis, the ALJ considered the severity of Plaintiff's various impairments.  See CAR 18-23.  In doing so, the ALJ identified a number of physical and mental impairments which were found to be severe.  See id.  The ALJ, however, found Plaintiff's (1) anemia, (2) migraines, (3) astigmatism and papilledema, (4) asthma and chronic obstructive pulmonary disease (COPD), and (5) left hand possible arthritic erosion to be non-severe impairments. See id.  The ALJ concluded:

> The claimant has the following severe impairments: status-post cerebrovascular accident, obesity, hypertension, depressive disorder, and anxiety disorder (20 CFR 416.920(c)).
>
> The above medically determinable impairments more than minimally limit the ability to perform basic work activities as required by SSR 85-28. The claimant also has physical impairments that are considered to be non-severe, such as anemia, migraines, astigmatism and papilledema, asthma and chronic obstructive pulmonary disease (COPD), and left hand possible arthritic erosion.
>
> CAR 18.

Plaintiff argues that the ALJ erred in finding at Step 2 that Plaintiff's anemia, migraines, astigmatism and papilledema, asthma and chronic obstructive pulmonary disease (COPD), and left hand possible arthritic erosion were not severe.  See ECF No 17, pg. 7.

      1.    Anemia

At Step 2, the ALJ stated:

> With regard to the claimant's anemia, she reported she had anemia that caused fatigue, dizziness and confusion (Ex. 9E/2). She testified that she takes a medication for her anemia that she has to pay for out of pocket and her iron levels are higher than they were, but still not normal (Testimony). She reported in the emergency department on June 30, 2017, that she had a history of anemia and was menstruating with a heavy cycle, and she had to sit down while working as a cook because she felt like she was going to black out (Ex. 2F/25). On June 8, 2018, she was evaluated with menorrhagia as being the likely cause of her iron deficiency anemia because an ultrasound showed she did not have fibroids, and objective examination that day showed no adverse constitutional findings (Ex. 9F/24). She was seen on June 6, 2019, for hemoglobin check, at which time she reported she was taking ferrous gluconate and it was non-constipating and noted that she can ride her bike or walk up and down stairs without getting winded (Ex. 12F/68). Physical examination that day demonstrated no abnormalities (Ex. 12F/70). Accordingly, the record does not objectively demonstrate that the claimant has more than minimal

/ / /

6

1   ongoing limitations in her ability to perform basic work activities due to anemia, which is therefore considered to be non-severe.

2   CAR 18.

3

4   Plaintiff asserts that the ALJ erred in finding at Step 2 that Plaintiff's anemia was

5   a non-severe physical impairment. See ECF No. 17, pg. 7.  Plaintiff argues:

6          Regarding anemia, nothing in the decision's relevant paragraph (CAR 18) meets this standard of review. A sentence citing CAR 854 reads, 1) "Physical examination that day demonstrated no abnormalities" (CAR 18), but in overall context it's unlikely this means Ms. Barbee's anemia, diagnosed and referred to throughout this record, is not medically determinable, and the following page (CAR 855) objectively reflects what can internally be deduced to be a low hemoglobin count (under 11)67 and continued prescription of iron. This decisional paragraph itself portrays more than minimal effect on the ability to work (having to sit down while working as a cook because she felt she would black out); records refer to this as causing fatigue (e.g., CAR 867); cardiologist Dr. Emlein's charts reflect "she passed out around menstruation" and "Her blood counts are 20% below the lower limit of normal consistent with a moderate anemia," which was not prevented by iron therapy — along with there perhaps being a vasovagal mechanism (CAR 675),which would have to be considered "in combination with" this anemia, as would the fatigue have to be considered together with stroke-related fatigue. Even if Ms. Barbee's work-related anemia limitations occurred only in a monthly cycle, this would still meet the above severity criteria.2 The decision's incorrect statement of no abnormalities on the discussed specific day, followed by a sentence saying, "the record does not objectively demonstrate that the claimant has more than minimal ongoing limitations ... due to anemia" (CAR 18), does not meet the legal standard and is incorrect.

18   See ECF No. 17, pgs. 7-8.

19         Plaintiff first contends that the ALJ somehow erred because "in overall context

20   it's unlikely . . . Ms. Barbee's anemia, diagnosed and referred to throughout this record, is not

21   medically determinable. . . ."  This statement is confusing in that Plaintiff acknowledges that the

22   ALJ found anemia to be a medically determinable impairment.  The hearing decision reflects that

23   the ALJ expressly so found.  See CAR 18.  The issue is whether Plaintiff has produced evidence

24   to show that her anemia cause more than a minimal impact on her ability to work.

25         In her argument, Plaintiff references a chart note of a visit with her cardiologist,

26   Dr. Emlein.  See ECF No. 17, pgs. 7-8 (citing CAR 675).  In this chart note, Dr. Emlein reports

27   on Plaintiff's subjective complaint of passing out "around menstruation."  CAR 675.

28   Objectively, examination was normal.  See id. at 676-77.  Further, this office visit occurred

7

on May 3, 2018 – before the June 9, 2019, office visit indicating medical controlled her anemia-related symptoms.  This evidence is thus unconvincing.

The Court finds that the ALJ did not err with respect to Plaintiff's anemia.  There is sufficient evidence in the record supporting the ALJ's conclusion that Plaintiff's anemia was a non-severe physical impairment.  The evidence cited by the ALJ indicates Plaintiff's anemia did not have a more than minimal effect on Plaintiff's ability to work.  Specifically, the ALJ relied on evidence from a June 6, 2019, physical examination where Plaintiff indicated her medication effectively treated her anemia. See CAR 18.  During this visit, Plaintiff reported she could ride her bike and walk up and down stairs without getting winded. Id.  This evidence is sufficient for the ALJ to determine Plaintiff's anemia was effectively treated and would have no more than a minimal effect on Plaintiff's ability to work.

2.   Migraines

The ALJ stated:

> With regard to the claimant's migraines, she reported that she had migraine headaches daily that caused light sensitivity and nausea (Ex. 6E/2). She testified that she had migraines normally every day but she has been taking a medication that makes them less of a migraine and more like a regular headache, and she still has to go lie down even with the medication because it is still a bad headache just not over the top unbearable (Testimony). On April 3, 2017, the claimant saw her primary care provider with complaints of migraine for two weeks that she described as left frontal pressure (Ex. 7F/27). On April 25, 2017, the claimant had complaints of constant migraine for six months but reported that she had no pain at the time of examination (Ex. 7F/35). On June 30, 2017, the claimant reported to an emergency department physician that she had a mild headache throughout the day due to caffeine withdrawal (Ex. 2F/27). She was well appearing and in no acute distress on January 20, 2018 (Ex. 3F/3). The claimant told her primary care provider on February 26, 2018, that she had been experiencing mild headaches (Ex. 7F/129). She told her primary care provider on December 26, 2018, that she had been having headaches every day since her stroke (Ex. 13F/46). She reported on January 11, 2019, that she was started on Topamax that was helpful with no adverse effects (Ex. 13F/25). The claimant's inconsistent report[ing] regarding headaches from the time of her stroke moving forward does not support a finding that migraines have caused more than minimal limitations in the ability to perform basic work activities and her migraines are therefore considered to be non-severe.

CAR 18.

///

8

1    Plaintiff asserts the ALJ erred in finding at Step 2 that Plaintiff's migraines were a

2    non-severe physical impairment.  See ECF No. 17, pg. 7.  Plaintiff argues:

3            Similarly, the decision doesn't seem to say Ms. Barbee's
             migraines/headaches are not medically determinable, just not severe
4            (CAR 18); but in any case, Social Security Ruling 19–4p now clarifies
             that Ms. Barbee's charted nausea, photophobia, location, duration,
5            quality, and intensity of headaches makes them so. Once again, most of
             what the decision says in its relevant paragraph does not at all support its
6            nonseverity finding but rather the reverse. The decision states a
             conclusion unsupported by this paragraph that "The claimant's
7            inconsistent reported [sic] regarding headaches from the time of her
             stroke moving forward does not support a finding that migraines have
8            caused more than minimal limitations . . . and her migraines are therefore
             considered to be non-severe." (CAR 18) That Ms. Barbee's headaches
9            were sometimes mild and sometimes worse, even sometimes "constant"
             and other times "daily," do not constitute inconsistencies, let alone reason
10           to find nonseverity; "inconsistences" don't constitute reason to find
             nonseverity. The paragraph itself reflects Ms. Barbee saying "she still has
11           to go lie down even with the medication because it is still a bad headache
             just not over the top unbearable" (id.), which would be incompatible with
12           the decision's light capacity or even with the ability to perform work. (Cf.
             fn.2.)
13
14           ECF No. 17, pg. 8.

15           Again, Plaintiff's argument is unpersuasive.  As with anemia, Plaintiff seems to

16   contend that the ALJ erred by not finding her migraine headaches to be a medically determinable

17   impairment.  Not so.  The ALJ expressly found otherwise.  See CAR 18.  Plaintiff does not cite

18   to any evidence in her argument showing that migraine headaches cause more than a minimal

19   impact on her ability to perform work-related activities.

20           The Court finds that there is sufficient evidence in the record supporting the ALJ

21   determination that Plaintiff's migraine headaches were a non-severe physical impairment.  As

22   the ALJ observed, Plaintiff reported on January 11, 2019, that medication (Topamax) was

23   effective in alleviating headaches.  CAR 18.  Plaintiff has not cited to evidence of work-related

24   limitations in functioning associated with migraine headaches to undermine the ALJ's

25   conclusion.

26   / / /

27   / / /

28   / / /

3.     Astigmatism and Papilledema

The ALJ stated:

> With regard to the claimant's astigmatism and papilledema, she reported
> she wore glasses that were prescribed by a doctor (Ex. 5E/10). She
> testified that she had pressure in her left eye since her stroke that they are
> monitoring, and she does not need surgery (Testimony). She said that her
> glasses allow her to see near and far, and they automatically tint in the
> daylight (Testimony). She was seen by an optometrist on March 29, 2017,
> with complaints of bilateral blurry vision, at which time her corrected
> vision was measured at 20/20 bilaterally and color photos demonstrated
> mild bilateral papilledema, and she was assessed with regular astigmatism
> bilateral, spasm of accommodation bilateral, and unspecified papilledema
> (Ex. 7F/18-22). The claimant's papilledema was somewhat improved
> when she saw the optometrist on follow up on May 2, 2017, but she was
> referred to an ophthalmologist for evaluation (Ex. 7F/44). An
> ophthalmologist reported on September 26, 2017, that the claimant had
> 20/20 vision in each eye, with intraocular pressure of 12 and 13, at which
> time it was reported the claimant had a history of papilledema in her left
> eye, but none currently (Ex. 12F/2-3). Examination on June 21, 2018,
> showed the claimant had 20/20 vision bilateral and full visual fields (Ex.
> 14F/14-17). Examination by an ophthalmologist on November 26, 2019,
> showed the claimant had neovascularization of the left retina, but her
> vision was again 20/20 bilaterally with full visual fields (Ex. 14F/29-34).
> Objective evidence of record does not demonstrate that the claimant's
> vision cannot be corrected to 20/20 bilaterally, or that she has restrictions
> in her visual fields. Accordingly, it is not found that her vision impairment
> causes more than minimal limitations in the ability to perform basic work
> activities and is therefore considered to be non-severe.

CAR 19.

According to Plaintiff, ALJ erred in finding at Step 2 that Plaintiff's eye

impairments were non-severe. See ECF No. 17, pgs. 8-9. Plaintiff asserts:

> The reason the decision finds none of Ms. Barbee's eye
> impairments, including papilledema, which is swelling of the optic nerve,
> severe seems to be that, at least with correction, her vision is normal.
> However, her papilledema, which probably arises from her hypertension
> or the stroke itself, can be an independent cause of vision problems, as
> well as her headaches, and is serious in that it indicates elevated
> intracranial pressure and requires immediate medical attention,3 though
> the decision doesn't seem to appreciate this. Ms. Barbee's blurry vision
> (e.g., CAR 993, 1002, see esp. 1005 ["Pt. States she still has troubles
> seeing up close, sensitivity to light and headache"]), aside from her
> headaches, could have a more than de minimis effect on her ability to
> work even though she might be able to "pass" a visual acuity test, and this
> also could be variable. The most relevant records (CAR 993–1025) do not
> fully support the decision's nonseverity finding under the above legal

/ / /

10

authority, and this is all the more true considering papilledema in combination with the headaches.

ECF No. 17, pgs. 8-9.

The Court finds there is sufficient evidence supporting the ALJ's conclusion that Plaintiff's astigmatism and papilledema are re non-severe.  In particular, the ALJ relied on evidence that Plaintiff's eye ailments did not impact her vision because, with corrective lens, Plaintiff maintained 20/20 vision.  <u>See</u> CAR 19.  Plaintiff has not pointed to evidence reflecting more than a minimal impact on Plaintiff's ability to work due to eye impairments which resulted in no loss of vision.

4.      <u>Asthma and COPD</u>

The ALJ stated.

With regard to the claimant's asthma and COPD, she was seen on May 14, 2018, for evaluation of asthma where it was noted she smoked cigars and was not on any maintenance medications, and objective examination showed her lungs were clear to auscultation with good air movement and no wheezing, rales or rhonchi (Ex. 11F/20-21). Pulmonary function test results were normal with her FEV1 129 percent of predicted and FVC 124 percent of predicted (Ex. 11F/22). Follow up pulmonary function test on August 17, 2018, was also normal (Ex. 11F/32). Objective testing showed normal pulmonary function and examination showed normal respiratory examination findings. Accordingly, the record does not demonstrate more than minimal limitations on the ability to perform basic work activities as a result of any breathing impairment, and any asthma or COPD is considered to be non-severe.

CAR 19.

Plaintiff provides no argument related specifically to COPD or asthma.  In any event, the ALJ's conclusion that Plaintiff's COPD and asthma are not severe impairments is supported by the evidence showing normal pulmonary function with clear lungs, good air movement, and no wheezing, rales, or rhonchi.

5.      <u>Left Hand Possible Arthritic Erosion</u>

The ALJ stated.

With regard to the claimant's left hand possible erosion, she reported when she filed her request for hearing that she had arthritis that caused swelling, numbness, and pain in her hands that made it difficult to complete simple tasks (Ex. 9E/2). She testified her hands went numb when she drives, and her left hand was worse, but her right hand hurt more

11

because she used it more (Testimony). She said her hands went numb if she used them for five to ten minutes (Testimony). She testified that the letter she submitted and is in file as exhibit 12E took her two days to type because of numbness in her hands, and she would have a hard time picking up a rubber band off the table because of the numbness in her hands (Testimony). The claimant had complaints of hand joint pain in the morning and evening when she saw her primary care provider on March 6, 2020, but examination of the claimant's hands and wrists showed no abnormalities (Ex. 12F/15-18). Her primary care provider reported on April 9, 2020, that x-rays from March 17, 2020, demonstrated suspicious proximal scaphoid erosive changes and dedicated wrist x-rays were suggested for further evaluation (Ex. 13F/2). Her primary care provider reported on April 17, 2020, that laboratory reports did not show any autoimmune disease (Ex. 12F/5). Objective examination findings have not demonstrated any abnormalities in the claimant's hands and laboratory reports have shown she does not have any autoimmune disorder, so x-rays that are suspicious for erosive changes without further supportive findings do not evidence the presence of a severe impairment.

CAR 19-20.

Plaintiff argues the ALJ erred in finding at Step 2 that Plaintiff's hand swelling were non-severe physical impairments. See ECF No. 17, pg. 9. According to Plaintiff:

It is particularly difficult to know whether the decision considers Ms. Barbee's hand swelling and numbness nonsevere or not even an MDI [medically determinable impairment], as it concludes, "x-rays that are suspicious for erosive changes without further supportive findings do not evidence the presence of a severe impairment." (CAR 19–20; see Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) ["A clear statement of the agency's reasoning is necessary because we can affirm the agency's decision to deny benefits only on the grounds invoked by the agency"].) The decision somewhat misstates this evidence, which reads that x-rays showed "suspicious proximal scaphoid erosive changes"; and its apparently relied on principle that erosive changes in wrist-joint bones ipso facto can't meet the above severity standard is obscure and incorrect. As noted, treating FNP Nancy Couper-Kemnitz indicated hand/finger swelling and numbness quite significantly limited Ms. Barbee's ability to use her hands and fingers. (CAR 472)

ECF No. 17, pg. 9.

Plaintiff's argument is unpersuasive. At the outset, the hearing decision indicates a finding that Plaintiff's hand impairment is a medically determinable impairment. The ALJ specifically found so, noting that Plaintiff's "left hand possible arthritic erosion" is a medically determinable impairment. CAR 18.

/ / /

/ / /

1          Plaintiff references a note from treating FNP [Family Nurse Practitioner] Nancy

2    Couper-Kemnitz.  See ECF No. 17, pg. 9 (citing CAR 472).  According to Plaintiff, Ms. Couper-

3    Kemnitz opined that Plaintiff's hand and finger swelling and numbness "quite significantly

4    limited Ms. Barbee's ability to use her hands and fingers."  Id.  The record reflects that Ms.

5    Couper-Kemnitz submitted a Physical Capacities assessment on April 16, 2018.  See CAR 472-

6    73.  Ms. Couper-Kemnitz opined that, due to numbness and tingling, Plaintiff can use her hands

7    and fingers up to two hours in an eight-hour workday.  See id. at 472.  Curiously, Ms. Couper-

8    Kemnitz adds: "secondary to smoke."  Id.

9          Upon examination of the record upon which the April 16, 2018, assessment is

10   based, the Court finds this evidence is unavailing.  As Defendant notes, the notation on the April

11   16, 2018, assessment form is not supported by Ms. Couper-Kemnitz's own objective findings on

12   examination.  Specifically, on April 16, 2018, Ms. Couper-Kemnitz reported normal objective

13   findings.  See CAR 629-33.  Similarly, on November 15, 2018, Ms. Couper-Kemnitz reported

14   normal objective findings.  See CAR 971-75.  Beyond Plaintiff's subjective complaints, Ms.

15   Couper-Kemnitz repots no objective findings to support her April 16, 2018, assessment.

16         Here, the ALJ expressly discussed hand swelling, particularly noting the lack of

17   objective examination findings which demonstrate abnormalities in Plaintiff's hands.  See CAR

18   19-20.  On March 6, 2020, Plaintiff saw her primary care provider complaining of hand joint

19   pain.  See id.  Despite Plaintiff's complaints, examination showed no abnormalities in Plaintiff's

20   hands.  See id.  Because, the ALJ relied on substantial evidence, and in the absence of evidence

21   offered by Plaintiff showing more than a minimal impact on her ability to work due to a hand

22   impairment, the ALJ did not err in concluding Plaintiff's hand swelling and numbness were non-

23   severe.

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

1

        B.      **Lay Witness Evidence**

2               Plaintiff argues the ALJ erred by failing to consider a third-party statement from

3       Plaintiff's sister, as well as the agency's own interviewer's statements.  See ECF No. 17 pg. 10-

4       12.  Plaintiff asserts:

5                       As mentioned, Ms. Barbee's sister, who is also her in-home
                supportive services provider, quantified Ms. Barbee's "ability to
6               participate in previous activities" as decreased by 50 percent. (CAR 198)
                This sister, Shallin Barbee-Meadows, provided a third-party function
7               report (CAR 198–205), but the decision doesn't evaluate it. . . .
                Consideration of third parties is mandated by 20 C.F.R. §416.929(c)(3).
8               (See also Social Security Ruling 16–3p.)
                        . . .Casually excusing failure to consider 3P evidence simply
9               because a claimant's testimony was similar and rejected should be the
                exception, not the rule; if a claimant and 3P say the same things, that's
10              usually considered corroboration in a courtroom, and it should be viewed
                as expectable that claimant and 3P testimony will overlap, considering
11              they both fill out nearly identical questionnaires, as can be seen from this
                file.
12                      Simply the sister's assessment that Ms. Barbee was operating at 50
                percent of her previous activity level is something novel, not found in Ms.
13              Barbee's testimony, and valuable orientation in a case where this
                decision's RFC rests on guesstimates by state agency doctors and this
14              decision itself based on words and numbers on printed pages. The sister
                states that sitting or standing for more than two hours is difficult for Ms.
15              Barbee, which happens to coincide with FNP Couper-Kemnitz's opinion.
                (Compare CAR 198, 472) Many points overlap, but in this case where the
16              decision thinks Ms. Barbee had no further balance or gait problems even
                two weeks out from her stroke it's notable that both Ms. Barbee and her
17              sister say she needs a cane. (CAR 204, 230) Overlaps with different twists
                ought to be viewed as significant: Ms. Barbee's sister says Ms. Barbee
18              now has "Loss of patience with current living situation and environment"
                and "Decreased interest" in social activities (CAR 203); Ms. Barbee says,
19              "Almost everyone gets on my nerves. I'm angry and impatient. Resentful
                that I need help" and regarding social activities that she's now "reclusive."
20              (CAR 229) It's not without meaning that in addition to checking multiple
                boxes for affected abilities, Ms. Barbee's sister additionally circled
21              "Memory."4 (CAR 203, 209)

22              See ECF No. 17, pgs. 10-12.

23              In a footnote, Plaintiff adds:

24                      Moreover, and an additional error-assignment: the decision fails,
                also, to consider the Social Security intake-worker's observation of Ms.
25              Barbee's memory impairment. (Supra 5:5–8; CAR 70, 180) This violates
                20 C.F.R. §416.929 and SSR 16–3p.
26

27              ECF No. 17, pgs. 11-2, n.4.

28      / / /

                                                14

1    Plaintiff relies on Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996), which

2    states: "Lay testimony as to a claimant's symptoms is competent evidence which the Secretary

3    must take into account unless he expressly determines to disregard such testimony, in which case

4    he must give reasons that are germane to each witness."  Plaintiff misstates the current law.  The

5    Court agrees with Defendant that 20 C.F.R § 416.920c(d) revised the Agency's regulations

6    regarding lay witness evidence and no longer requires the ALJ to articulate how evidence from

7    non-medical sources is considered despite prior case law to the contrary.

8    Courts must enforce revised agency regulations despite prior conflicting case law

9    unless the Court's interpretation follows from unambiguous terms of a statute and leaves no

10   room for agency discretion.  See Lambert v. Saul, 980 F.3d 1266, 1274 (9th Cir. 2020) (citing

11   Nat'l Cable & Telecomms Ass'n v. Brand X Internet Servs., 545 U.S. 967, 982 (2005)).  Such is

12   not the case here given that the new regulation directly contradicts prior case law regarding

13   consideration of lay witness evidence.  Because the ALJ was not required to articulate how

14   evidence from non-medical sources such as Plaintiff's sister and the Agency Interviewer was

15   utilized, the Court finds no error consistent with the new regulations.

16        **C.    Plaintiff's Statements and Testimony**

17   The Commissioner determines the weight to be given to a claimant's own

18   statements and testimony, and the court defers to the Commissioner's discretion if the

19   Commissioner used the proper process and provided proper reasons.  See Saelee v. Chater, 94

20   F.3d 520, 522 (9th Cir. 1996).  An explicit finding must be supported by specific, cogent

21   reasons.  See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are

22   insufficient.  See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner

23   must identify what testimony is not afforded weight and what evidence undermines the

24   testimony.  See id.  Moreover, unless there is affirmative evidence in the record of malingering,

25   the Commissioner's reasons for rejecting testimony as not credible must be "clear and

26   convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008)

27   (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464

28   F.3d 968, 972 (9th Cir. 2006)).

1    If there is objective medical evidence of an underlying impairment, the

2    Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

3    because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

4    341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

5           The claimant need not produce objective medical evidence of the
            [symptom] itself, or the severity thereof.  Nor must the claimant produce
6           objective medical evidence of the causal relationship between the
            medically determinable impairment and the symptom.  By requiring that
7           the medical impairment "could reasonably be expected to produce" pain or
            another symptom, the Cotton test requires only that the causal relationship
8           be a reasonable inference, not a medically proven phenomenon.

9           80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in
            Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).
10

11   The Commissioner may, however, consider the nature of the symptoms alleged,

12   including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

13   947 F.2d at 345-47.  In weighing a claimant's statements and testimony, the Commissioner may

14   also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or

15   other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment

16   or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work

17   records; and (5) physician and third-party testimony about the nature, severity, and effect of

18   symptoms.  See Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider

19   whether the claimant cooperated during physical examinations or provided conflicting

20   statements concerning drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59

21   (9th Cir. 2002).  If the claimant testifies as to symptoms greater than would normally be

22   produced by a given impairment, the ALJ may disbelieve that testimony provided specific

23   findings are made.  See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683,

24   687 (9th Cir. 1989)).

25   At Step 4, the ALJ summarized Plaintiff's statements and testimony as follows:

26          The claimant reported she was five feet, four inches tall and weighed 185
            pounds when she filed her claim for benefits. She reported she had
27          difficulty standing or sitting for more than two hours at a time. She
            reported she cared for two children and their daily needs, played games
28          with them, did yoga, and rode a bicycle. She reported she prepared frozen

meals and did light cleaning, laundry, and household repairs. She reported she got around by walking, driving, riding in a car, or riding a bicycle. According to the claimant, her conditions affected her ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, climb stairs, see, remember, complete tasks, concentrate, understand, use her hands, and get along with others. She reported that she used a cane. She reported she had severe depression and anxiety that was being treated by a psychiatrist with medications, and was working through finding medication to control her blood pressure. She reported her balance was an issue and that walking and going up and down stairs was an issue for her. She reported medication caused side effects of fatigue and affected her memory. She reported she walked and rode her bike to strengthen her unstableness whenever she could. She testified that she was unable to work due to residuals from her stroke such as balance issues, and her medications caused dizziness, drowsiness, confusion, and tiredness. She said she needed a lot of help from her IHSS worker and family. She said she had weakness in her hands, fingers and feet, and her hands went numb often so it was hard to open things or hold her phone. She testified that she fell down a couple times since her stroke in spite of a cane and she has improved over time and lessened the use of her cane, but she walks with a wider gait and still uses the cane three to four days a week. The claimant said that her IHSS caregiver helps her with personal hygiene and light cleaning and light cooking, and reminded her of appointments and to take her medication. She said she is able to do minimal cooking and cleaning when her caregiver is not around. She testified that she can drive but it was uncomfortable to sit for long. She said that she was still having issues with blood pressure control in spite of medication, and she checks her blood pressure at home where it is generally around 150/98. She said a normal day was spent downstairs listening to audiobooks or listening to her children, using the restroom a lot due to medication, and dealing with pain. She testified it was hard for her to walk even a mile, and standing and sitting were difficult because her hips hurt and feet go numb. She said she could sit for an hour before needing to get up and move around and she could walk a quarter mile with the use of a cane. She said she spent time laying down during the day because sometimes sitting hurt. She testified the most she could lift and carry comfortably was a gallon of water. She said she does not sleep at all because of pain and she was restless and nervous. She testified that she takes a pill to help her sleep and it knocks her out, but it is not restful. The claimant said that her feet swelled but she was unsure of the reason and it helped to elevate her feet a couple hours daily. She said that she did not often go to the supermarket and her family does it for her, and she takes her cane if she has to go to the store. She testified that pain would make it difficult for her to perform work tasks and consistently be able to show up. She also said that it would be difficult to learn new things because of her memory issues. She testified that her medication has helped her depression and anxiety but has not fixed it, and that some days are better than others, but most days are like a dark cloud and she does not feel well about where she is in life (Ex. 2E, 5E-6E, 12E, and Testimony).

CAR 23-24.

/ / /

/ / /

As to Plaintiff's statements and testimony, the ALJ concluded:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

CAR 24.

The ALJ then outlined a detailed summary of the objective medical evidence of record, including Plaintiff's subjective complaints to medical providers, which the Court does not recite here.  See id. at 24-28.  In the context of weighing Plaintiff's objective statements and testimony, the ALJ concluded:

> In evaluating the claimant's statements under the factors described in 20 CFR 416.929(c)(3) and SSR 16-3p, the claimant's allegations of debilitating symptoms are neither entirely consistent nor entirely supported by the evidence. For example, she was seen in the emergency department on June 30, 2017, with complaints of experiencing syncope while at work as a cook that day, but her earnings record does not demonstrate any earnings after 2015 and she reported she last worked in June 2015 (Ex. 7D/1, 2E/3 and 2F/26). She reported that her balance was affected by her stroke, but less than two weeks after her stroke she denied any extremities weakness, numbness or gait disturbance, and objective examination showed normal sensation, balance, gait, and fine motor skills (Ex. 5E/9 and 7F/28-29).

CAR 28.

According to Plaintiff, the ALJ failed to provide sufficient reasoning in evaluating her subjective statements and testimony.  ECF No. 17, pg. 12.  According to Plaintiff, the ALJ only referenced two aspects of her subjective statements and testimony, and only at the end of the discussion.  Plaintiff states:

> It's not till CAR 28 that the decision expressly returns to evaluating her statements. There it focuses on two specific, supposed contradictions: a 6/30/17 emergency department syncope episode (CAR 336) and a 4/3/17 office visit two weeks after her stroke. (CAR 501–504) In the ED episode she reported dizziness, lightheadedness, and loss of consciousness "while cooking at work" "but her earnings record does not demonstrate any earnings after 2015 and she reported she last worked in June 2015." In the office visit she denied weakness, numbness, or gait disturbance, and examination showed normal sensation, balance, gait, and fine motor skills. Obviously, the latter covers the gait and balance ground discussed regarding the records summary.

However, impeaching Ms. Barbee based on the hearsay recordation by someone else in a medical chart focused on syncope, not employment — a chart Ms. Barbee probably never saw, and without affording her any opportunity to respond — is unfair, contrary to standard legal doctrine, and not clear and convincing. Presumably the decision knows no more about the circumstances surrounding the creation of that chart than Ms. Barbee and knows even less than she about how she came to officially assert her last day of employment for purposes of her claim as being about two years earlier. Perhaps she tried to start a new job and had syncope her first day; perhaps she had syncope while "working at cooking," rather than "cooking at work"; perhaps her syncope caused her to give a confused rendition to the chart-recorder; perhaps the chart-recorder was confused.

The normal neurologic signs at CAR 502 less than two weeks after Ms. Barbee's stroke might be more reliable hearsay but may well be auto-chart population artifacts, considering, e.g., she was referred to neurology six weeks later (CAR 525), was "positive" for "Lightheadedness, Near syncope, Paresthesia" on the same type of chart over a year later (CAR 642; see also 675), was being assessed for hip pain affecting walking three years later (CAR 788), and was given the physical limitations and certification for in-home supportive services by her medical providers discussed in the statement of facts.

Not only are these unreliable bases of impeachment but they only call into question Ms. Barbee's capacity to balance and walk briefly in a clinical setting, leaving all her other allegations untouched; yet the decision clearly didn't consider her allegations in assessing RFC and MRFC. The regulation (20 C.F.R. §416.929) and case law's highest standard emphasize that claimant symptom allegations *must* ordinarily be considered, not ignored after being grazed by a couple of illegal potshots.

ECF No. 18, pgs. 12-13.

Here, the Court's analysis turns on the ALJ's conclusion that Plaintiff's statements and testimony are "neither entirely consistent nor entirely supported by the evidence." The Court interprets this statement as articulating two distinct reasons for rejecting Plaintiff's statements and testimony. First, the ALJ determined that Plaintiff's statements and testimony are inconsistent with each other (not entirely consistent). Second, the ALJ determined that Plaintiff's statements and testimony are inconsistent with the objective medical evidence (not entirely supported).

Regarding Plaintiff's own inconsistent statements, by way of example the ALJ noted that, on the one hand, Plaintiff said she experienced syncope while at work in June 2017 but, on the other hand, Plaintiff reported she last worked in 2015. See CAR 28. These two statements are obviously inconsistent and may permissibly factor into the ALJ's analysis. Moreover, the ALJ discussed Plaintiff's testimony in detail and noted numerous instances where

1   Plaintiff's allegations were inconsistent with the objective medical evidence of record.  See id. at

2   24-28.  Because the ALJ relied on inconsistencies among Plaintiff's statements as well as lack of

3   support in the objective medical record, the Court finds the ALJ did not err in weighing

4   Plaintiff's subjective statements and testimony.

5          **D.**   **Residual Functional Capacity**

6         Residual functional capacity is what a person "can still do despite [the

7   individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v.

8   Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current

9   "physical and mental capabilities").  Thus, residual functional capacity describes a person's

10  exertional capabilities in light of his or her limitations.  An ALJ's RFC finding must include all

11  of the limitations the ALJ has found to be supported by the evidence of record. See SSR 85-15.

12        In determining residual functional capacity, the ALJ must assess what the plaintiff

13  can still do in light of both physical and mental limitations.  See 20 C.F.R. §§ 404.1545(a),

14  416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual

15  functional capacity reflects current "physical and mental capabilities").  Where there is a

16  colorable claim of mental impairment, the regulations require the ALJ to follow a special

17  procedure.  See 20 C.F.R. §§ 404.1520a(a), 416.920a(a).  The ALJ is required to record pertinent

18  findings and rate the degree of functional loss.  See 20 C.F.R. §§ 404.1520a(b), 416.920a(b).

19        As indicated above, the ALJ determined that Plaintiff has the physical and mental

20  residual functional capacity to light work with certain limitations.  See CAR 23. For physical

21  limitations, the ALJ concluded that Plaintiff can only "occasionally climb ramps and stairs, never

22  climb ladders, ropes, and scaffolds, and should avoid working at heights and around dangerous

23  machinery."  Id.  Regarding mental limitations, the ALJ concluded Plaintiff "can understand,

24  remember and apply simple job instructions; maintain concentration, persistence, and pace for

25  simple job tasks; and can interact with supervisors and coworkers, but only interact occasionally

26  with the public."  Id.

27  / / /

28  / / /

1        Plaintiff generally argues:

2            There is no explanation for this decision's RFC [physical residual
         functional capacity] and MRFC [mental residual functional capacity]
3        beyond its evaluation of the opinion evidence. The flaws in those
         evaluations compel reversal. This claim's filing date implicates the
4        medical opinion evaluation methodology of 20 C.F.R. § 416.920c, but this
         decision's reasoning bears limited relationship to that regulation or the
5        requirements of rational, reviewable explanation.

6        ECF No. 17, pg. 14.

7        Plaintiff then challenges the ALJ's evaluation of the medical opinion evidence

8    relating to both mental and physical residual functional capacity.  See id. at 14-18.

9        "The ALJ must consider all medical opinion evidence."  Tommasetti v. Astrue,

10   533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).  The ALJ errs by not

11   explicitly rejecting a medical opinion.  See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir.

12   2014).  The ALJ also errs by failing to set forth sufficient reasons for crediting one medical

13   opinion over another.  See id.

14       Under the regulations, only "licensed physicians and certain qualified specialists"

15   are considered acceptable medical sources.  20 C.F.R. § 404.1513(a); see also Molina v. Astrue,

16   674 F.3d 1104, 1111 (9th Cir. 2012).  Where the acceptable medical source opinion is based on

17   an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it

18   rests on his own independent examination of the claimant."  Tonapetyan v. Halter, 242 F.3d

19   1144, 1149 (9th Cir. 2001).  The opinions of non-examining professionals may also constitute

20   substantial evidence when the opinions are consistent with independent clinical findings or other

21   evidence in the record.  See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  Social

22   workers are not considered an acceptable medical source.  See Turner v. Comm'r of Soc. Sec.

23   Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010).  Nurse practitioners and physician assistants

24   also are not acceptable medical sources.  See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016).

25   Opinions from "other sources" such as nurse practitioners, physician assistants, and social

26   workers may be discounted provided the ALJ provides reasons germane to each source for doing

27   so.  See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874

28   F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance

21

1    when opinions from "other sources" may be considered acceptable medical opinions).

2           The Commissioner has promulgated revised regulations concerning how ALJs

3    must evaluate medical opinions for claims filed, as here, on or after March 27, 2017.  See 20

4    C.F.R. §§ 404.1520c, 416.920c.  These regulations supersede prior caselaw establishing the

5    treating physician rule which established a hierarchy of weight to be given medical opinions

6    depending on their source.  See id.; see also Jones v. Saul, 2021 WL 620475, at *9 (E.D. Cal.

7    Feb. 17, 2021) ("In sum, because (1) the 2017 regulations are not arbitrary and capricious or

8    manifestly contrary to statute, (2) the prior judicial construction was not mandated by the

9    governing statutory language to the exclusion of a differing agency interpretation, and (3) the

10   [treating-physician rule] is inconsistent with the new regulation, the court concludes that the

11   2017 regulations effectively displace or override [prior caselaw.]").  Thus, ALJs are no longer

12   required to "defer to or give any specific evidentiary weight to" treating physicians over medical

13   opinions from other sources.  See Carr v. Comm'r of Soc. Sec., 2021 WL 1721692, at *7 (E.D.

14   Cal. Apr. 30, 2021).

15          Under the revised regulations, the ALJ must evaluate opinions and prior

16   administrative medical findings by considering their "persuasiveness."  See Buethe v. Comm'r

17   of Soc. Sec., 2021 WL 1966202, at *3 (E.D. Cal, May 17, 2021) (citing 20 C.F.R. §

18   404.1520c(a)).  In determining how persuasive the opinion of a medical source is, an ALJ must

19   consider the following factors:  supportability, consistency, treatment relationship,

20   specialization, and "other factors."  See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(b),

21   (c)(1)-(5)).  Despite a requirement to consider all factors, the ALJ's duty to articulate a rationale

22   for each factor varies.  See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(a)-(b)).

23          Specifically, in all cases the ALJ must at least "explain how [she] considered the

24   supportability and consistency factors," as they are "the most important factors."  See Buethe,

25   2021 WL 1966202, at *4 (citing § 404.1520c(b)(2)).  For supportability, the regulations state:

26   "[t]he more relevant the objective medical evidence and supporting explanations presented by a

27   medical source are to support his or her medical opinion(s) or prior administrative medical

28   finding(s), the more persuasive [the opinion] will be."  See Buethe, 2021 WL 1966202, at *4

(quoting § 404.1520c(c)(1)).  "For consistency, the regulations state: '[t]he more consistent a

medical opinion(s) or prior administrative medical finding(s) is with the evidence from other

medical sources and nonmedical sources in the claim, the more persuasive [the opinion] will

be.'"  <u>Buethe</u>, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(2)).  "The ALJ is required to

articulate findings on the remaining factors (relationship with claimant, specialization, and

'other') only when 'two or more medical opinions or prior administrative medical findings about

the same issue' are 'not exactly the same,' and both are 'equally well-supported [and] consistent

with the record.'"  <u>Buethe</u>, 2021 WL 1966202, at *4 (quoting § 404.1520c(b)(2) & (3)).

        Regarding the medical opinion of Plaintiff's physical residual functional capacity,

the ALJ stated:

> The State agency physician who reviewed this claim at the initial level on July 3, 2018, offered the prior administrative medical finding that the claimant had the residual functional capacity to lift and/or carry 20 pounds occasionally and ten pounds frequently; push and/or pull as much as lift and/or carry; stand and/or walk for about six hours in an eight-hour workday; sit for more than six hours on a sustained basis in an eight-hour workday; occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; and should avoid concentrated exposure to hazards such as machinery and heights (Ex. 1A/10-11). The State agency physician who reviewed this claim at the reconsideration level on November 21, 2018, affirmed this prior administrative medical finding (Ex. 3A/11-13). This prior administrative medical finding is persuasive because the supporting statements of these physicians are persuasive. Further, it is consistent with evidence of record that shows the claimant would be limited to light work with a need to avoid heights and hazards, as well as limitations on climbing ramps and stairs, by residuals from a minor stroke, obesity and hypertension, but would not be more limited because she has not had significant adverse findings on objective examination, her gait and balance have been objectively reported to be normal, and cardiovascular examination findings have only ever been normal (Ex. 2F/21-28, 3F/3, 7F/28-169, 8F/5-22, 12F/11-85, and 13F/67 and 97).
>
>               * * *
>
> On April 16, 2018, the claimant's own medical source, a nurse practitioner, offered the opinion that the claimant could stand/walk no more than two hours and sit for no more than two hours in an eight-hour workday, and could use her hands/fingers no more than two hours in an eight-hour workday, occasionally carry up to 30 pounds with no reference to being able to carry any weight frequently, never balance, and occasionally climb, stoop, kneel, crouch, crawl, and reach (Ex. 6F/9-10). This opinion is not persuasive because it is not supported by the mild objective findings of this provider at the prior visit and the normal neurological findings on follow up, and it appears this opinion is based on the subjective statements of the claimant that day. As noted above, there

23

1    has been no findings of a severe impairment regarding the hands and
     mental status examinations have failed to show memory loss to support
2    this statement (Ex. 7F/142, 155-157 and 169). Further, the record is more
     consistent with a finding that the claimant would be limited to light work
3    with a need to avoid heights and hazards, as well as limitations on
     climbing ramps as outlined above (Ex. 1F/13-16, 2F/28, 4F/3-21, 7F/71-
4    151, 9F/28-33, 12F/18-90, and 13F/8-109).

5    CAR 28-30.

6    Regarding the medical opinion of Plaintiff's mental residual functional capacity,

7    the ALJ stated:

8    The State agency psychologist who reviewed this claim at the initial level
     on July 6, 2018, offered the prior administrative medical finding that the
9    claimant did not have a severe mental impairment (Ex. 1A/8). The State
     agency psychologist who reviewed this claim at the reconsideration level
10   on November 26, 2018, affirmed this prior administrative medical finding
     (Ex. 3A/9-10). This prior administrative medical finding is not persuasive
11   because the supporting statements of these psychologists are not
     persuasive. Further, the record demonstrates the claimant has received
12   counseling and medication management for mental impairments which
     limit her to simple job instructions and tasks, and only occasional
13   interaction with the general public, but would not be further limited
     because she has not required emergent or inpatient care for any mental
14   health disorder and objective examinations have not demonstrated
     significant deficits, but rather depressed or tearful mood and/or anxious
15   affect, and she has also been found to have euthymic affect, normal
     memory, normal attention and concentration (Ex. 1F/13-16, 2F/28, 4F/3-
16   21, 7F/71-151, 9F/28-33, 12F/18-90, and 13F/8-109).

17   On June 25, 2020, the claimant's own medical source, a physician
     assistant, offered the opinion that the claimant had\ poor or no, or only
18   fair, ability and aptitude to do unskilled to skilled work or particular types
     of jobs, and would be absent four or more times per month (Ex. 16F/5-6).
19   He further opined that these limitations were caused by very poor
     frustration tolerance, markedly poor concentration and focus, and marked
20   side effects from medication (Ex. 16F/6). This extremely restrictive
     opinion is not persuasive because it is not supported by this provider's
21   own objective records that show the claimant generally vacillated from
     tearful and depressed to euthymic, but otherwise mild objective findings
22   and report that the claimant did not have adverse effects to medication
     (Ex. 7F/71-137, 9F/28-33, 12F/28-90, and 13F/8-53). Further, the record
23   is more consistent with a finding that the claimant would be limited to
     simple job instructions and tasks, and only occasional interaction with the
24   general public, but would not be further limited as outlined above (Ex.
     1F/13-16, 2F/28, 4F/3-21, 7F/71-151, 9F/28-33, 12F/18-90, and 13F/8-
25   109).

26   CAR 29.

27   / / /

28

24

1   / / /

2         Finally, as to opinions relating to both physical and mental residual functional

3   capacity, the ALJ stated:

4         On July 13, 2017, the claimant's own medical source, a nurse practitioner,
          offered the opinion that the claimant would likely have to go into a skilled
5         nursing facility due to physical or psychological deterioration if she had to
          do her own activities of daily living (Ex. 7F/63). This opinion is not
6         persuasive because it is not consistent with the objective findings of this
          provider, which showed no objective adverse findings that day (Ex.
7         7F/65). Further, this extreme opinion is not consistent with a finding that
          the claimant would be limited to a reduced range of light, unskilled work
8         with occasional public contact as outlined above (Ex. 1F/13-16, 2F/21-28,
          3F/3, 4F/3-21, 7F/28-169, 8F/5-22, 9F/28-33, 12F/11-90, and 13F/8-109).
9
          CAR 30.
10

11        The ALJ in this case limited Plaintiff to, physically, a reduced range of light work

12  and, mentally, simple jobs with occasional interaction with the public. Plaintiff argues these

13  findings are unexplained with respect to the medical opinion evidence.  For the reasons

14  discussed below, the Court disagrees.

15        Without citation to authority, Plaintiff generally argues: "There is no explanation

16  for this decision's RFC and MRFC beyond its evaluation of the opinion evidence."  ECF No. 17,

17  pg. 14.  The Court rejects this argument at the outset as belied by the hearing decision, which

18  reflects consideration at Step 4 of the opinion evidence in addition to Plaintiff's own statements

19  and testimony.  Indeed, it is odd that Plaintiff would suggest the ALJ's residual functional

20  capacity assessment is based *solely* on a flawed analysis of the opinion evidence, immediately

21  after arguing the ALJ erred in evaluating her statements and testimony in determining Plaintiff's

22  residual functional capacity.

23        The Court turns to what appears to be Plaintiff's main argument – that the ALJ

24  decision lack explanation because the ALJ failed to correctly apply the new regulations

25  governing evaluation of the opinion evidence.  According to Plaintiff:

26        . . . This claim's filing date implicates the medical opinion
          evaluation methodology of 20 C.F.R. § 416.920c, but this decision's
27        reasoning bears limited relationship to that regulation or the requirements
          of rational, reviewable explanation.
28

1    ECF No. 17, pg. 14.

2        The Court does not agree.  As reflected in the ALJ's detailed analysis of the

3    medical evidence, recited above, the ALJ complied with the revised regulation.  For example,

4    the ALJ explained she found Ms. Couper-Kemnitz's opinion unpersuasive because the opinion

5    was not supported by the mild objective findings Couper-Kemnitz's had provided at Plaintiff's

6    prior visit and the normal neurological findings found at a follow up visit.  <u>See</u> CAR 29-30.  The

7    ALJ also explained she found Ms. Couper-Kemnitz's opinion not persuasive because she

8    believed Ms. Couper-Kemnitz's opinion was likely based on Plaintiff's subjective statements.

9    <u>See</u> CAR 29-30.

10       By way of further example regarding Mr. Libbey's opinions, the ALJ explained

11   she did not find Mr. Libbey's opinion persuasive because it was not supported by the provider's

12   own objective records.  <u>See</u> CAR 29.  Additionally, the ALJ stated she found Mr. Libbey's

13   opinion not persuasive because the larger record was more consistent with a finding that Plaintiff

14   would be able to work in a limited capacity as opposed to the more limited option outlined by

15   Mr. Libbey.  <u>See</u> <u>id.</u>

16       These examples illustrate the adequacy of the ALJ's analysis.  The Court finds

17   the ALJ sufficiently explained her rationale for finding Plaintiff could perform a range of light

18   work subject to certain physical and mental limitations. The ALJ discussed the medical opinions

19   and prior administrative medical findings and explained the persuasiveness of those opinions and

20   findings.  Plaintiff's argument that the ALJ failed to comply with the current regulations is

21   simply unsupported by the record and the hearing decision.

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28

26

1  / / /

2  / / /

3                          **IV.  CONCLUSION**

4              Based on the foregoing, the Court concludes that the Commissioner's final

5  decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS

6  HEREBY ORDERED that:

7              1.      Plaintiff's motion for summary judgment, ECF No. 17, is denied;

8              2.      Defendant's motion for summary judgment, ECF No. 23, is granted;

9              3.      The Commissioner's final decision is affirmed; and

10             4.      The Clerk of the Court is directed to enter judgment and close this file.

11

12  Dated:  March 28, 2023

13                                              _____
                                                DENNIS M. COTA
14                                              UNITED STATES MAGISTRATE JUDGE

27